**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

GORDON DOUGLAS TUTTON,

        Petitioner,

  v.

BRIAN DUFFY, Warden,

        Respondent.

Case No. 1:11-cv-00863-LJO-SKO-HC

ORDER SUBSTITUTING BRIAN DUFFY, WARDEN OF THE CALIFORNIA MEDICAL FACILITY, AS RESPONDENT

FINDINGS AND RECOMMENDATIONS TO DENY THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), ENTER JUDGMENT FOR RESPONDENT, DISMISS PETITIONER'S MOTION FOR A DECISION (DOC. 24), AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY

**OBJECTIONS DEADLINE:**
**THIRTY (30) DAYS AFTER SERVICE**
**OF THIS ORDER**

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is the petition, which was filed on May 26,

1

2011.  Respondent filed an answer on July 26, 2011, and Petitioner filed a traverse on September 27, 2011.

I.  <u>Jurisdiction</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  The challenged judgment was rendered by the Kern County Superior Court (KCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).

Respondent filed an answer on behalf of Respondent Gary Swarthout, Warden of the California State Prison at Solano, California, where Petitioner was incarcerated at the time the petition was filed.  Petitioner thus named as Respondent a person who had custody of the Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  <u>See</u>, <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  Although

2

Petitioner was subsequently transferred to another institution, the Court maintains its jurisdiction because "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990) (citing Smith v. Campbell, 450 F.2d 829, 834 (9th Cir. 1971)).

Accordingly, this Court has jurisdiction over the subject matter of this action and over the person of the Respondent.

II. Order Substituting Respondent

After the traverse was filed, Petitioner was transferred to the California Medical Facility (CMF) at Vacaville, California. (Doc. 22.) The official website of the California Department of Corrections and Rehabilitation shows that Brian Duffy is the acting warden of CMF.[1] Brian Duffy, Warden of CMF, is therefore an appropriate respondent in this action, and that he should be substituted as Respondent pursuant to Fed. R. Civ. P. 25(d), which provides that a court may at any time order substitution of a public officer who is a party in an official capacity whose predecessor dies, resigns, or otherwise ceases to hold office.

Accordingly, it is ORDERED that Brian Duffy, Warden of the California Medical Facility, is SUBSTITUTED as Respondent.

III. Procedural Summary

In Kern County Case number SF014071A, Petitioner was convicted after a jury trial of gross vehicular manslaughter while intoxicated

---

[1] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official websites. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010). The address of the official website for the CDCR is http://www.cdcr.ca.gov.

1   in violation of Cal. Pen. Code § 191.5(a), driving while intoxicated

2   in violation of Cal. Veh. Code § 23152(a), causing bodily injury to

3   three persons in violation of Cal. Veh. Code § 23558, and causing

4   great bodily injury to one person and having served a prior prison

5   term in violation of Cal. Pen. Code §§ 12022.7, 1192.7(c)(8) and

6   667.5(b).  <u>People v. Tutton</u>, Court of Appeal of the State of

7   California case number F055709, 2010 WL 3436225, *1 (Fifth Dist.,

8   Sept. 2, 2010) (CCA opinion).[2]  On June 24, 2008, Petitioner was

9   sentenced to state prison for seventeen years.  (<u>Id.</u>)

10       On appeal to the Court of Appeal of the State of California,

11  Fifth Appellate District (CCA), the judgment was affirmed.  (<u>Id.</u> at

12  *7.)  On November 17, 2010, the California Supreme Court (CSC)

13  summarily denied Petitioner's petition for review without a

14  statement of reasoning or authority.  (LD 25.)[3]

15       Petitioner filed the petition presently pending before this

16  Court on May 26, 2011.

17       IV.  <u>Factual Summary</u>

18       In a habeas proceeding brought by a person in custody pursuant

19  to a judgment of a state court, a determination of a factual issue

20  made by a state court shall be presumed to be correct; the

21  petitioner has the burden of producing clear and convincing evidence

22  to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1);

23  <u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48 (9th Cir. 2004).  This

24  presumption applies to a statement of facts drawn from a state

---

26  [2]  Because the Respondent has failed to provide citations to the record in support
27  of some statements of the procedural history of this case and to submit to this
    Court a copy of the appellate decision, the Court cites to the Westlaw version of
    the unpublished decision of the Court of Appeal of the State of California in case
28  number F055709, <u>People v. Tutton</u>, filed on September 2, 2010.
    [3]  "LD" refers to documents lodged by Respondent in support of the answer.

4

appellate court's decision.   Moses v. Payne, 555 F.3d 742, 746 n.1

(9th Cir. 2009).   The following statement of facts is taken from the

decision of the CCA opinion:

### FACTS

On the afternoon of August 5, 2007, a blue pickup truck
ran a stop sign and hit the right passenger side of a SUV
that had entered the intersection. Kellie Rowland was
driving the SUV; her son, Brock, and his friend, J.R.,
were in the back. Appellant and his girlfriend, Shalee
Cole, were in the blue pickup truck. The collision caused
the SUV to rollover, and during the rollover, Brock was
ejected from the vehicle. Brock died from his injuries.
The impact with the SUV caused the pickup truck to spin
clockwise 270 degrees, and resulted in injuries to
appellant and Cole.

At the subsequent trial, Rowland testified that appellant
was the driver of the vehicle. She stated that she locked
eyes with appellant just before the collision. She did not
know if anyone else was in the pickup truck because she
focused on appellant. After the collision occurred,
appellant walked up to Rowland and, in a very slurred
tone, said that he was sorry. Rowland did not tell the
California Highway Patrol (CHP) officers who arrived at
the accident scene that she saw appellant driving.
However, when she was interviewed at the hospital, she
explicitly told the interviewing officer that, "The man
was driving." Furthermore, when she was interviewed on
August 15, 2007, Rowland told the officers that appellant
was in the blue truck that had run a stop sign and had hit
her.

J.R. testified that he saw appellant's blue truck hit the
SUV, and he saw the silhouette of a man driving. When the
SUV finally came to a rest after being hit, J.R. got out
and looked for Brock. Before he found Brock, he saw
appellant helping a woman who was sitting on the ground
outside the passenger side of the blue truck.

Dagoberto Morales testified that he drove up to the
accident scene just after the accident happened. He saw
appellant walking from the driver's side of the truck
towards the woman who was seated on the ground on the
passenger side of the truck. The prosecution also
introduced prior inconsistent statements that Morales had

made to a CHP officer about the accident. Morales had
previously told the officer that, as he pulled up right
after the collision occurred, appellant was in the
driver's seat and a female was in the passenger seat. The
female opened the passenger door and fell out; appellant
then got out, ran around the back of the pickup, and
attempted to pick up the female. Morales talked with
appellant, who said he was driving the blue truck and did
not see the stop sign.

Emergency Medical Technician (EMT) Chad Powers treated
appellant inside the ambulance. Appellant said his back
and right arm hurt. Appellant had lacerations to his ear
and cuts to his arm; he showed no sign of concussion or
head injury. Powers asked appellant "if he was the driver
or passenger in the vehicle, and if he had his seat belt
on." Appellant said that "he was the driver in the vehicle
and he did have his seat belt on." Appellant thought that
the other vehicle's driver ran the red light or stop sign.

Dr. John Ziomek was the emergency room physician who
treated appellant at the hospital. When he was examined at
the hospital, appellant had injuries to the left side of
his head and his left elbow. Dr. Ziomek's notes also
indicated that appellant had been driving the pickup, but
the doctor could not recall whether appellant specifically
told him that appellant was the driver.

Paramedic/EMT Edward Guevara treated and transported
Shalee Cole. Cole complained of back pain. Guevara
observed that Cole had abrasions on the right side of her
face and head, but he did not see any injuries on the left
side of Cole's body. Guevara testified that he had 21
years of experience responding to traffic injury
collisions. He opined that drivers normally suffer more
left-sided injuries whereas passengers suffer more
injuries to their right sides. He also testified that Cole
told him that she was the front passenger.

At the hospital, Cole was treated by Dr. Imran Imam. She
had pain in her back, left side abdominal, and left leg.
Cole also had an abrasion on the right side of her scalp.
The doctor's notes indicated that the paramedics had
reported that Cole was not wearing a seat belt. Dr. Imran
was told that Cole was a passenger in a vehicle and was
ejected during a rollover. However, Cole did not show

6

signs of having been expelled from the truck or injured by a seat belt.

CHP officer Kenny Hagerman and his partner, John Lopez, were dispatched to the scene of the accident. By the time they arrived, fire department and ambulance personnel were already on site. Hagerman interviewed appellant about the accident. Appellant told Hagerman that he was the driver of the pickup. Appellant said he was driving westbound on Lerdo Highway at approximately 45 miles per hour. As he slowed down to make a right turn onto Magnolia, he was hit by the SUV. Hagerman then spoke with Cole. Subsequently, Hagerman and Lopez began taking photographs of the scene and marking all the evidence, such as tire friction or skid marks, fluid spills, dig marks, and debris from the vehicles. They spent approximately two and a half hours at the scene.

After completing their field investigation, the CHP officers then went to San Joaquin Hospital to check appellant's injuries and evaluate whether there was a DUI violation. Hagerman, a drug recognition expert (DRE), concluded that appellant was under the influence of a combination of drugs: a central nervous system (CNS) depressant and a CNS stimulant. Hagerman then placed appellant under arrest for DUI and causing great bodily injury and the death of one person. Appellant agreed to submit to a blood test. Appellant tested positive for THC (marijuana) and Diazepam (a benzodiazepine). Subsequently, the officers booked appellant into the Kern County jail.

Hagerman had extensive training and experience in investigating traffic accidents. His training included 80 hours of accident investigation at the Highway Patrol Academy, and a 24-hour course on techniques of accident investigation. During his 10 and one-half year employment with CHP, Hagerman had investigated approximately 2,000 traffic accidents, not including the traffic accidents that he assisted other officers in investigating.

Based upon the physical evidence, Hagerman opined that the pickup truck failed to stop at the stop sign as the SUV entered the intersection and collided with the right side or passenger side of the SUV. This caused the SUV to roll over and during the course of the vehicle rollover, a passenger (Brock) was ejected.

7

Hagerman also opined that appellant's injuries were consistent with being the driver of the vehicle. Hagerman explained how appellant may have sustained his injuries based upon the movement of the vehicles before, during, and after the collision.

Joseph Yates, an experienced, accredited accident reconstructionist, disagreed with Hagerman about who was the driver of the pickup truck. He opined that the impact with the SUV caused the pickup truck to spin clockwise 270 degrees, which would result in both the truck's driver and passenger going forward and to their left. In similar collisions, the truck's driver would typically be injured by what was in front (the steering wheel) and to the left (the side door panel). Yates opined, based on the physical evidence and especially the injuries, that Cole was driving the truck at the time of impact. Yates also opined that Rowland would have had one second to view the truck prior to impact.

Hagerman agreed with Yates about the angle of impact, the clockwise spin of the truck, and that the truck's occupants started to be thrown forward and then were projected to the left. He did not agree with Yates that Cole was driving the truck. Hagerman based his disagreement upon the "totality of the investigation," including the statements by appellant and other witnesses. Hagerman also believed that Cole's left leg injury could have been caused by hitting the gear shift lever, the steering wheel, or the dashboard. He also disagreed with Yates's testimony about how drivers or passengers could suffer injuries from the steering wheel, seat belts, and vehicle debris. He maintained his opinion that appellant was the driver of the pickup truck.

Cole invoked her Fifth Amendment right to remain silent at trial and only admitted that she was in the blue pickup truck. Four defense witnesses, however, testified that Cole had admitted to them that she was the driver but that appellant would take responsibility for being the driver. The witnesses included Cole's mother, stepfather, and two friends.

(CCA opinion at *1-*4.)

V. <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

8

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.

An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable. Williams, 529 U.S. at 410. A state court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011). Even a strong case for relief does not render the state court's conclusions unreasonable. Id. To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87. The § 2254(d) standards are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398.

Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits and based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Where a state court has not reached the merits of a petitioner's claim or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply, and a federal court must review the claim de novo.  Cone v. Bell, 556 U.S. 449, 472

1    (2009); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

2    The last reasoned decision must be identified to analyze the state

3    court decision pursuant to 28 U.S.C. § 2254(d)(1). Barker v.

4    Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339

5    F.3d 1107, 1112-13 (9th Cir. 2003).

6        Here, the CCA's decision was the last reasoned decision in

7    which the state court adjudicated Petitioner's claims on the merits.

8    Where there has been one reasoned state judgment rejecting a federal

9    claim, later unexplained orders upholding that judgment or rejecting

10   the same claim are presumed to rest upon the same ground. Ylst v.

11   Nunnemaker, 501 U.S. 797, 803 (1991). This Court will "look

12   through" the unexplained decision of the California Supreme Court to

13   the DCA's last reasoned decision as the relevant state-court

14   determination. Id. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998

15   n.5 (9th Cir. 2004).

16       VI.   Introduction of Officer Hagerman's Expert Opinion

17       Petitioner argues that his right to due process of law

18   guaranteed by the Fourteenth Amendment was violated by the admission

19   of Officer Hagerman's expert testimony that Petitioner was the

20   driver of the vehicle. Petitioner contends that the officer lacked

21   qualifications to render an opinion that Petitioner was the driver

22   based on the nature of his physical injuries and the dynamics of the

23   vehicles moving during the accident. Petitioner argues that the

24   expert evidence was critical to the resolution of the case because

25   the identity of the driver was a contested fact, Petitioner

26   presented a qualified accident reconstruction expert to testify that

27   Cole was the driver, and the fact witnesses' testimony was close.

28   Petitioner argues that admission of the evidence rendered

Petitioner's trial fundamentally unfair, and the state court's decision upholding the admission of the evidence was thus an unreasonable application of clearly established federal law.

A.   The State Court's Decision

The pertinent part of the decision of the CCA addressing the introduction of the evidence is as follows:

**Whether CHP Officer Hagerman Could Opine That Appellant Was Driving the Truck**

Appellant first contends that the trial court abused its discretion by permitting CHP officer Hagerman to opine that appellant was the driver of the vehicle based upon appellant's injuries. According to appellant, Hagerman did not have the necessary qualifications, such as being a biomechanical engineer or accident reconstruction expert, to testify about the source and medical causes of appellant's injuries. We disagree that there was an abuse of discretion.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which is testimony relates." (Evid.Code, § 720, subd. (a).) "It is generally established that traffic officers whose duties include investigations of automobile accidents are qualified experts and may properly testify concerning their opinions as to the various factors involved in such accidents. [Citations.]" (*Hart v. Wielt* (1970) 4 Cal.App.3d 224, 229.) Here, based upon his training and experience, Hagerman was qualified to testify about the causes of the accident and the movement and location of the vehicles before and after impact. His experience investigating over 2,000 accidents also qualifies Hagerman to testify about the injuries that drivers and passengers typically receive in these types of collisions. While we agree with appellant that being a biomechanical engineer or accident reconstruction expert would qualify a person to testify about the injuries that a driver or passenger would normally receive, we conclude that Hagerman's experience are (sic) sufficient to qualify him to testify that appellant was the driver because appellant suffered injuries that are typical to those suffered by drivers.

1
2
3

> The jury, however, may give Hagerman's testimony less or
> more weight based upon whether the jury believes that
> experience in investigation over 2,000 accidents is less
> or more valuable than education as a biomechanical
> engineer.

4
5
6
7
8
9
10
11
12
13
14
15

> We also conclude that *People v. Williams* (1992) 3
> Cal.App.4th 1326 (*Williams*) is inapposite. In *Williams*, we
> concluded that a police officer could not give expert
> testimony that a driver was intoxicated based upon the
> results of a controversial field sobriety test, the
> horizontal gaze nystamus test, because the officer did not
> have the necessary qualifications to opine that the
> results of the test indicated alcohol ingestion as opposed
> to some other cause. (*Id.* at p. 1330-1331.) In *Williams*,
> however, it was admitted that several causes other than
> alcohol ingestion could result in the test results. (*Id.*
> at p. 1331.) In contrast, in this case, there is no
> controversy that the impact of the vehicles could cause
> certain injuries to a driver that are distinct from
> injuries to a passenger. Hagerman provided an explanation
> for how appellant may have been injured during the
> accident and gave his opinion that the injuries, along
> with statements by other witnesses, led him to conclude
> that appellant was the driver.

16
17

> Thus, there was no abuse of discretion in admitting
> Hagerman's testimony.

18    CCA opinion at *4-*5.

19          B.    Analysis

20          Petitoner's claim based on state law or a challenge to the

21
22    state court's application of California law concerning the

23    introduction of expert testimony must be dismissed.  A federal court

24    reviewing a habeas petition pursuant to 28 U.S.C. § 2254 has no

25    authority to review alleged violations of a state's evidentiary

26    rules.  Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

27    Because federal habeas relief is available to state prisoners only

28

to correct violations of the United States Constitution, federal laws, or treaties of the United States, federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).  Here, there is no indication that any interpretation or application of state law was untenable or an attempt to avoid review of federal issues.

With respect to Petitioner's claim that the Due Process Clause was violated by the admission of the opinion of the investigating officer, Petitioner is entitled to relief only if the evidence alleged to have been prejudicial was so arbitrary or prejudicial that its admission rendered the trial fundamentally unfair and violated fundamental conceptions of justice.  Perry v. New Hampshire, - U.S. -, 132 S.Ct. 716, 723 (2012); Estelle v. McGuire, 502 U.S. at 67-69; Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Unless a more specific constitutional guarantee is applicable, admission of evidence warrants habeas relief only where the result denies a fundamentally fair trial guaranteed by due process.  Estalle v.McGuire, 502 U.S. at 67-68.  Further, the

15

Supreme Court has stated that "the category of infractions that violate 'fundamental fairness' is a very narrow one." Estelle, 502 U.S. at 72-73.

Even the clearly erroneous admission of evidence that renders a trial fundamentally unfair does not warrant habeas relief unless forbidden by clearly established federal law as stated by the Supreme Court. Holley v. Yarborough, 568 F.3d at 1101. The Supreme Court has not yet made a clear ruling either setting forth a controlling legal standard for evaluating discretionary decisions to admit or exclude expert evidence or holding that admission of expert testimony on an ultimate issue to be resolved by the trier of fact constitutes a due process violation sufficient to warrant habeas relief. Thus, a state court decision upholding a trial court's exercise of discretion on the admission of expert testimony cannot be contrary to, or an unreasonable application of, clearly established federal law. See, Moses v. Payne, 555 F.3d 742, 758-62 (9th Cir. 2009) (concerning the discretionary exclusion of expert testimony); Briceno v. Scribner, 555 F.3d 1069, 1077-78 (9th Cir. 2009), overruled in part on other grounds as recognized in Emery v. Clark, 643 F.3d 1210 (9th Cir. 2011) (admission of expert testimony by a gang investigator did not violate clearly established federal law); see also, Carey w. Musladin, 549 U.S. 70, 77 (2006).

Admission of evidence violates due process only if there are no permissible inferences that a jury may draw from it, and the

16

evidence is of such quality as necessarily prevents a fair trial.
Boyde v. Brown, 404 F.3d 1159, 1172-73 (9th Cir. 2005) (quoting
Jammal v. Van de Kamp, 926 F.2d 918, 920)).  As noted in Holley v.
Yarborough, 568 F.3d at 1101, in the absence of clearly established
federal law based on the holdings of the Supreme Court, the
admission of the allegedly irrelevant or prejudicial evidence cannot
constitute a decision that is contrary to, or an unreasonable
application of, clearly established federal law which would warrant
relief in this proceeding.  There is no clear holding that
introduction of analogous evidence violates due process and requires
habeas relief.  Thus, Petitioner has not shown an unreasonable
application of a specific holding from the United States Supreme
Court.

However, this Court will proceed to consider more generally
whether Petitioner's due process right to a fair trial was violated
by admission of Officer Hagerman's opinion.  This Court is bound by
California law, which confers considerable discretion in the trial
court to admit expert opinion testimony, and which has acknowledged
the admissibility of expert opinions based on the observations of
traffic officers whose duties include investigations of automobile
accidents.  See, CCA opinion at *4.

Petitioner contends that Officer Hagerman lacked qualifications
to render the opinion because he was a high school graduate without
formal education in physics, engineering, or medicine, or any

17

specialized training in diagnosing medical conditions or determining the cause of complex accidents.  He was not a member of the CHP's accident reconstruction unit, and there was no evidence that he had done any accident reconstruction work or determined accident causation.

The record reflects that Hagerman had some training but also had significant experience in investigating 2,000 accidents and helping with many other accident investigations.  (RT 320, 600-601.) Hagerman detailed the observations he made during over two hours of investigation at the scene to determine the point of impact, points of rest and rotation of the vehicles, and the cause of the accident. He testified about the position and condition of the vehicles, debris, tire marks, and fluid spills.  (Id. at 601-12, 614.)  He also detailed his interviews and conversations with witnesses. Hagerman explained his conclusions by expressly referring to the factual bases for them, such as tire friction marks indicating that the SUV dragged the truck, dig marks indicating that the SUV had rolled over, fluid spills showing the direction of the truck during the collision, and vehicle damage indicating the nature of the collision.  (Id. at 613, 617-28.)

Hagerman testified without objection that he determined that Petitioner was the driver of the truck based on Petitioner's statements, Cole's statements, the later statement of SUV passenger Jordan Root, and Petitioner's being the registered owner of the

18

truck.  He also relied on the statement of Dago Morales, who had been following the SUV, arrived on the scene before anyone exited the truck, and observed Petitioner seated in the driver's seat. Morales saw a female passenger open the passenger side door and fall out onto the ground; Petitioner then opened the driver's side door, ran to the back of the pickup, and tried to pick up the female and put her back into the vehicle.  (Id. at 670-73, 712-13.)  Morales told the officer that when Morales asked Petitioner what had happened, Petitioner said that he did not see the stop sign as he was driving the vehicle; when asked which vehicle he drove, Petitioner pointed to the truck.  (Id. at 674-78, 699.)  Hagerman relied on the statement of Kellie Roland who stated Petitioner was the driver, and the statement of Jordan Root, who at the time of impact saw the shadow of a male, and not a female, in the driver's seat.  (Id. at 678.)

Hagerman further testified that his opinion was based in part on Petitioner's physical injuries, consisting of multiple glass cuts to his arms and bruising to the left forearm and hand, which were consistent with his being the driver of the vehicle with his left hand on the steering wheel because the impact would throw the driver forward and down.  (Id. at 679, 1048-49.)  Hagerman testified that for a brief moment after impact, the truck continued to go straight, and then it was dragged along; at this point, the driver would be thrown to the left front of the vehicle, or toward the A pillar, a

19

location where the driver's side window and the front windshield

meet in the corner.  The other party would go more toward the rear

mirror in the vehicle and front windshield.  Since the truck's front

windshield was still intact, the only thing that would have cut

Petitioner as the driver on his arms and head would have been the

glass shattering from the SUV.  The driver sustained the majority of

the injuries and cuts from this type of collision.  (Id. at 679-81.)

Hagerman further opined that the injuries Petitioner and Cole

sustained were not consistent with having been thrown out of the

truck because there was no road burn or rash.  (Id. at 735, 738-40.)

Hagerman knew from the thousands of accidents he had investigated

that seat belt marks or burns depended on the direction the car was

headed and the direction in which the riders in the vehicle were

being thrown.  (Id. at 1047-48.)  If Cole had been driving and

wearing a seat belt, she would have suffered injuries from the seat

belt that would have left visible marks on her neck, which she did

not have; if Petitioner had been wearing his seat belt, he would

have suffered such marks, but they were not observed.  (Id. at

1047.)  This opinion was consistent with the direction of rotation

of the truck, the fluid spill marks, and the tire power friction

marks.  (Id. at 681-82.)

Hagerman disagreed with the defense expert's opinion that Cole

was thrown into the armrest on the driver's door because Hagerman

had owned a similar truck and did not believe from looking at the

20

pictures of the truck that the rest was as long as Yates described it.  Hagerman believed that someone getting thrown forward without restraint would almost completely miss the arm rest; the injuries could have been sustained from the passenger seat's being thrown forward and to the left and her back hitting the right side of the steering wheel.  The steering wheel could have been bent from Cole's traveling from the passenger seat and hitting the steering wheel. (Id. at 1049-50.)  Hagerman opined that Cole's injury to her left leg, which Yates stated came from contact with the dashboard on the left side of the driver's side where blood from a knee would have been, could have come from Cole's traveling either into the two gear shift levers in the floor position between the driver and the passenger or into the steering wheel.  (Id. at 1050-51.) Either party could have been injured from the dashboard if thrown towards it.  (Id.)  He disagreed with Yates's conclusion that Cole was driving because of the position of the driver's seat; Hagerman opined that if a short-statured woman such as Cole had been driving and was thrown into the steering wheel, he would expect to see facial injuries, which Cole did not suffer.  (Id. at 1052.)  He also disagreed with Yates's opinion that a seat belt would not cause an injury to the left side, abdomen, or hip area of a person who was thrown to the left because people often wore seat belts under their arms which could cause injuries to the back and neck in a collision. (Id. at 1053.)  Hagerman also opined that one reason that Petitioner

21

suffered only limited injuries by being thrown forward and to the left and causing damage to the driver door was that he was intoxicated and relaxed at the time of the collision.  (Id. at 1055.)

Officer Hagerman's opinion concerning the identity of the driver was based in part on the movement of the vehicles and the physical injuries to Petitioner and Cole.  However, this portion of the opinion was supported by Hagerman's observations of vehicles' positions and movement, injuries, and other pertinent factors in thousands of accidents he had investigated.  Thus, Hagerman had special knowledge and experience that qualified him to render such an opinion.

Even if Hagerman lacked qualifications to opine on physical injuries and the dynamics of the accident, the admission of that portion of Hagerman's opinion as to the identity of the driver did not render Petitioner's trial fundamentally unfair.  Hagerman's opinion was based on many other significantly probative factors, including the multiple admissions of Petitioner, the statements of all persons who survived the accident and the statement of witness Dago Morales.  Although Petitioner characterizes the other evidence of the driver's identity as evenly balanced, virtually all of the evidence pointed to Petitioner as the driver except for Cole's and Petitioner's later statements and the defense expert's testimony.

Hagerman testified at length and was subjected to detailed cross-examination which tested the bases of his opinions.

Further, the jury was instructed that it was to determine the facts from the evidence received at trial, including whether the defendant made an admission; it could consider consistent and inconsistent statements of a witness for credibility purposes and evidence of the truth of the facts stated by the witness on the former occasion; and it was to judge the credibility of the witnesses.  (RT 1374, 1381-84.)  The jury was also instructed that it was not bound by an expert witness' opinion, and could disregard any opinion it found to be unreasonable.  The jury was instructed to consider the qualifications and believability of the witnesses, the facts or materials upon which each opinion was based, and the reasons for each opinion; that an opinion was only as good as the facts and reasons upon which it was based, and should consider whether facts upon which opinions were based had been proved or disproved as well as the strength and weaknesses of the bases for the opinion.  The jury was also instructed that in resolving a conflict among expert opinions, the opinions should be weighed based on the qualifications and believability of each witness, the reasons for each opinion, and the matter upon which each was based.  (Id. at 1385-87.)  It thus appears that Petitioner received the benefit of procedures that permit and foster responsible evaluation of

evidence.  <u>See</u>, <u>Perry v. New Hampshire</u>, 132 S.Ct. at 728-29.  In summary, no unfairness appears.

Petitioner argues that the state court never expressly decided the constitutional issue, and thus the state court's decision is not entitled to any deference.  However, even if the claim is considered <u>de novo</u>, the foregoing analysis shows that admission of the opinion neither resulted in a violation of Petitioner's due process rights, nor rendered Petitioner's trial fundamentally unfair.  Accordingly, it will be recommended that Petitioner's claim concerning Hagerman's opinion be denied.

VII.   <u>Ineffective Assistance of Counsel</u>

Petitioner argues that his right to the effective assistance of counsel at trial, guaranteed by the Sixth and Fourteenth Amendments, was violated by his counsel's failure to object to the introduction of Officer Hagerman's opinion that Cole's injuries showed that she was the passenger.

A.   <u>The State Court's Decision</u>

The following is the pertinent part of the CCA's opinion:

**Whether Trial Counsel Provided Ineffective Assistance of Counsel For Failing to Object to Officer Hagerman's Testimony About Cole**

Appellant next complains that his trial counsel provided ineffective assistance when trial counsel failed to object to Hagerman's testimony that, based upon her injuries, Cole was not the driver of the pickup truck. In order to prevail on a claim for ineffective assistance of counsel, appellant must make two showings. First, he must show that counsel's representation fell below an objective standard

for reasonableness under prevailing professional norms. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-88; *People v. Gray* (2006) 37 Cal.4th 168, 206-207.) Second, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to the defendant. (*Strickland v. Washington, supra*, 466 U.S. at p. 687; *People v. Kelly* (1992) 1 Cal.4th 495, 519-520.) Furthermore, appellant's claims implicate his trial counsel's trial tactics or strategic reasons for not making certain objections at trial. However, in this direct appeal, there is no evidence in the record for why trial counsel did not object. "'In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.'" (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

Here, trial counsel objected to Hagerman's testimony that, based upon his injuries and other evidence, appellant was the driver. The trial court overruled the objection. When Hagerman testified that Cole was not the driver of the pickup, trial counsel did not object. It is probable that trial counsel did not object because his previous objection was overruled. Trial counsel's objection to Hagerman's testimony about Cole was likely based upon the same grounds as his objection to Hagerman's testimony about appellant. Thus, trial counsel may have tactically decided not to object because he did not want to lose credibility with the jury by raising futile objections. In any case, appellant cannot show that the failure to object was prejudicial because any objection to Hagerman's testimony about Cole would be overruled for the same reason that the trial court overruled the objection to Hagerman's testimony about appellant-namely, that Hagerman had the necessary qualifications to testify that Cole was the passenger based upon her injuries. (See *People v. Ferraez* (2003) 112 Cal.App.4th 925, 934 [noting that "[t]he failure to object to admissible evidence does not constitute ineffective assistance of counsel when to do so would have been futile."].)

CCA opinion at *5.

///

B.   Analysis

In Premo v. Moore, - U.S. -, 131 S.Ct. 733, 739-40 (2011), the Supreme Court described the high bar presented by § 2254(d)(1) for prevailing on a claim of ineffective assistance of counsel:

> "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052]. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689 [104 S.Ct. 2052]. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687 [104 S.Ct. 2052].
>
> "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...
>
> " 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ----, ---- [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690 [104 S.Ct. 2052]. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689 [104 S.Ct. 2052]; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question

is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' id., at 689 [104 S.Ct. 2052]; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles, 556 U.S., at ----, 129 S.Ct., at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."

Premo v. Moore, 131 S.Ct. at 739-40 (quoting Harrington v. Richter, 131 S.Ct. 770 (2011)).

In analyzing such a claim, a court need not address the deficiency and prejudice inquiries in any given order and need not address both components if the petitioner makes an insufficient showing on one.  Strickland, 466 U.S. at 697.

Here, the state court articulated the correct legal standard regarding the ineffective assistance of counsel and concluded that counsel could have failed to object for tactical reasons and, in any event, Petitioner had shown no prejudice from counsel's failure to object.  The foregoing analysis of Petitioner's claim concerning the introduction of Officer Hagerman's opinion that Petitioner was the driver shows that admission of the evidence did not result in

prejudice or fundamental unfairness. Officer Hagerman's opinions concerning the driver rested on the same factual bases, namely, the observations of participants and witnesses, the physical evidence indicating the vehicles' positions and movements during the collision, and the data concerning the injuries suffered by Petitioner and Cole. Petitioner's experience and training were uniform with respect to the two opinions. Thus, the same reasons that prevented the introduction of Hagerman's opinion concerning Petitioner's being the driver from constituting a denial of due process also prevent the admission of Hagerman's opinion concerning Cole's not being the driver from being fundamentally unfair. In short, a claim that Hagerman's opinion concerning Cole rendered the trial fundamentally unfair would be without merit.

Because the evidence did not infect the proceedings with fundamental unfairness, any effort by counsel to exclude the evidence on that ground would have been futile. Petitioner has not shown that any prejudice resulted from counsel's failure to object to the opinion. Thus, Petitioner has not shown that trial counsel engaged in prejudicial, substandard practice by failing to raise the claims concerning Petitioner's extra-judicial statements. Cf. James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (failure to raise the issue of sufficiency of the evidence is not prejudicial where there was overwhelming evidence of guilt; failure to make a motion which would not have been successful is not ineffective assistance of counsel).

The Court concludes that the state court's decision denying Petitioner's claim concerning the ineffective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law.

VIII.   Prosecutorial Misconduct

Petitioner argues that in closing argument the prosecutor told the jury that to find Petitioner not to be the driver would require a finding that all the People's witnesses lied at trial.  Petitioner argues that this was misconduct because the conviction was based not on believability of witnesses, but rather on the existence or non-existence of proof beyond a reasonable doubt.  Petitioner contends that the misconduct resulted in a misstatement of the burden of proof because the requirement of proof beyond a reasonable doubt did not require the jury to choose between the alternatives of conviction or determining that all the prosecution witnesses had lied.  Petitioner argues that the misconduct violated Petitioner's right to due process of law, and that reversal is required because the remarks related to the contested issue of the driver's identity, and the evidence against Petitioner was not overwhelming.

A.   The State Court's Decision

The pertinent part of the CCA's decision on this issue is as follows:

### Prosecutorial Misconduct

Finally, appellant contends that the prosecutor committed misconduct in her closing argument. Appellant asserts that the prosecutor misstated the law on the prosecution's burden of proof when she argued that a finding that appellant was not the driver would be tantamount to a finding that various prosecution witnesses, such as Hagerman and Rowland, had lied. Appellant also asserts that the prosecutor misrepresented the testimony of a toxicologist. We disagree that there was any reversible error.

"The standards governing review of misconduct claims are settled ." (*People v. Friend* (2009) 47 Cal.4th 1, 29.) " 'In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition;

29

only if an admonition would not have cured the harm is the claim of misconduct preserved for review.' [Citation.] When a claim of misconduct is based on the prosecutor's comments before the jury, " 'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" [Citations.]" (*Ibid.*)

Trial counsel objected to the prosecutor's statements about the testimony of the toxicologist, which appellant asserts misrepresented the toxicologist's testimony. The trial court responded by informing the jury that: "Well, we received a lot of testimony based on that. [¶] Once again, ladies and gentlemen, I will defer to your recollection of what the experts testified to about. [¶] And you can make up your own decision on that." We conclude that this admonition cured any harm that may have been caused by the prosecutor's statements.

Trial counsel, however, did not object to the prosecutor's assertion that "the only way the defendant cannot be the driver of th[e] vehicle" is if various prosecution witnesses "all lied to you." Thus, the claim has been forfeited. Nevertheless, because appellant also is asserting a claim of ineffective assistance based upon the failure to object to the allegedly improper statements, we examine this claim on the merits. We conclude that appellant cannot show prejudice-that there was a reasonable probability that trial counsel's failure to object to the statements would have resulted in a more favorable result. (*People v. Kelly*, *supra*, 1 Cal.4th at pp. 519-520.)

Here, the jury was properly instructed on the prosecution's burden of proof. The jury also was advised that statements by attorneys were not evidence. The jury was specifically instructed that "[i]f anything concerning the law said by the attorneys in their argument or at any other time conflicts with [the trial court's] instructions on the law, you must follow [the trial court's] instructions."

The evidence in the case also showed that appellant was the driver. Appellant admitted to Hagerman and Powers that he was the driver. Rowland saw him driving the pickup truck right before the collision. J.R. saw the silhouette of a man and not a woman driving the truck. Morales either

saw appellant exit from the driver's side of the truck, or it could be deduced from Morales's testimony that appellant exited from the driver's side of the truck to assist Cole who was on the ground outside the truck, on the passenger side of the truck. Finally, based upon Hagerman's testimony and Guevara's testimony, appellant's injuries were consistent with the injuries of the driver and Cole's injuries were consistent with the injuries of a passenger of the truck.

Thus, there is no reasonable probability that the jury would have found that appellant was not the driver of the truck. Therefore, appellant cannot prevail on his claim of ineffective assistance of counsel.

CCA opinion at *6-*7.

B.  Analysis

Pursuant to § 2254(d)(1), a prosecutor's improper remarks violate the Constitution only if they so infect the trial with unfairness as to make the resulting conviction a denial of due process.  Parker v. Matthews, – U.S. –, 132 S.Ct. 2148, 2153 (2012) (per curiam); see, Darden v. Wainwright, 477 U.S. 168, 181 (1986); Comer v. Schriro, 480 F.3d 960, 988 (9th Cir. 2007).  Prosecutorial misconduct deprives the defendant of a fair trial as guaranteed by the Due Process Clause if it prejudicially affects the substantial rights of a defendant.  United States v. Yarbrough, 852 F.2d 1522, 1539 (9th Cir. 1988) (citing Smith v. Phillips, 455 U.S. 209, 219 (1982)).  The standard of review of claims concerning prosecutorial misconduct in proceedings pursuant to § 2254 is the narrow standard of due process, and not the broad exercise of supervisory power; improper argument does not, per se, violate a defendant's

constitutional rights.  Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (citing Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996)).  This Court must thus determine whether the alleged misconduct has rendered a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. at 183.  It must be determined whether the prosecutor's actions constituted misconduct, and whether the conduct violated Petitioner's right to due process of law.  Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000).

To grant habeas relief, this Court must conclude that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Parker v. Matthews, 132 S.Ct. at 2155 (quoting Harrington v. Richter, 131 S.Ct. at 767-87).  The standard of Darden v. Wainwright is a very general one that leaves courts with more leeway in reaching outcomes in case-by-case determinations.  Parker v. Matthews, 132 S.Ct. at 2155 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

In determining whether remarks in argument rendered a trial fundamentally unfair, a court must judge the remarks in the context of the entire proceeding to determine whether the argument influenced the jury's decision.  Boyde v. California, 494 U.S. 370, 385 (1990); Darden v. Wainwright, 477 U.S. at 179-82.  In Darden, the Court considered whether the prosecutor manipulated or

misstated evidence, whether specific rights of the accused were implicated, the context of the remarks in light of both parties' arguments, the instructions given by the trial court, and the weight of the evidence.  Darden, 477 U.S. at 179-82.

Here, the challenged remark occurred in the course of a discussion of the requirements of proof of the charge of driving under the influence.  (RT 1414-23.)  The prosecutor had reviewed the Petitioner's conduct chronologically and then covered the evidence concerning who was driving, including Roland's and Root's observations, Petitioner's admissions and Cole's statements, and the circumstantial evidence.  The prosecutor argued that the admissions and statements made at or near the time of the accident were true, and she urged the jury to think about all the considerations in their role as finders of fact.  (Id. at 1421-23.) The prosecutor then stated:

> Now, to say that Mr. Tutton was not the driver
> would be the same as saying that Kellie Roland
> lied to you, Jordan Root lied to you, the EMTs,
> they lied to you, Officer Hagerman, he lied to
> you, Mr. Morales and Mr. Corona, they all lied
> to you, as well.
>
> That is the only way the defendant cannot be the
> driver of the vehicle.

(Id. at 1423:16-23.)

The prosecutor's remark came in the context of the prosecutor's marshalling the evidence pertinent to the disputed fact of the identity of the driver.  The prosecutor then continued

33

with her analysis of the requirements of the offense of driving

under the influence, and she then moved on to address the evidence

relating to the gross vehicular manslaughter and the enhancements.

(Id. at 1423-34.)  She asked the jury to keep all the evidence in

mind during the defense's closing argument. (Id. at 1435.)  After

the defense argued, the prosecutor urged the jury to focus on all

the evidence, and she addressed the conflicting evidence concerning

who was driving the truck, as well as the evidence concerning

Petitioner's intoxication.  (Id. at 1472-93.)  In short, the remark

was an isolated statement made in the course of a detailed review

of evidence pertinent to a set of key credibility determinations.

The jury was instructed that it must determine the facts from

the evidence produced at trial and not from any other source, to

apply that law given to it by the court, to follow the court's

instructions if anything concerning the law said by the attorneys

in their argument or at any other time during the trial conflicted

with the instructions, to decide the case on the convincing force

of the evidence and not merely based on the number of witnesses, to

decide guilt based on the prosecution having the burden of proof

beyond a reasonable doubt, and that the statements of counsel were

not evidence.  (Id. at 1374-75, 1383, 1387-88.)  Additionally, the

prosecution's evidence was strong.  There were multiple sources of

direct and circumstantial evidence tending to show that Petitioner

was the driver, was under the influence, and was proceeding with gross negligence at the time of the accident.

Credibility is a matter to be decided by the jury. Thus, prosecutors who present to the jury in argument the false alternatives of acquittal or determining that prosecution witnesses are lying might improperly shift the burden of proof to the defense because it is possible that the prosecution witnesses could have testified honestly but nonetheless mistakenly. See, United States v. Ruiz, 710 F.3d 1077, 1082 (9th Cir. 2013). However, prosecutors must be given reasonable latitude to argue reasonable inferences based on the evidence, including that defense witnesses and their testimony were incredible. Id. at 1083. Isolated passages of a prosecutor's argument may not have a significant impact on the jury's deliberations where the jury is informed that they are matters of opinion and not evidence. Donnelly v. DeChristoforo, 416 U.S. at 646. Instructing the jury that lawyers' comments and argument are not evidence can cure the harmful effect of isolated instances of improper argument. Sassounian v. Roe, 230 F.3d 1097, 1107 (9th Cir. 2000). Arguments of counsel carry less weight with a jury than do instructions from the court. Boyde v. California, 494 U.S. 370, 384-85 (1990).

In sum, the remark was an isolated event in the course of a detailed review of the evidence, the permissible inferences to be drawn therefrom, and the proper evaluation of the evidence. The

prosecutor had set forth the conflicting evidence and argued why the jury should accept the testimony of the prosecution's witnesses and the consistent physical evidence.  The evidence against the Petitioner was substantial and probative.  The jury was correctly instructed on the burden of proof and how to evaluate the statements or arguments of counsel.  Under these circumstances, the Court concludes that the argument was not prejudicial and did not materially affect the fairness of the Petitioner's trial.  Cf. United States v. Ruiz, 710 F.3d at 1084.

Accordingly, the Court concludes that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  Thus, Petitioner's claim concerning prosecutorial misconduct should be denied.  In sum, it will be recommended that the petition for writ of habeas corpus be denied.

IX.   Motion for a Decision

On June 10, 2013, petitioner filed a letter in which he requested that the Court issue a decision in the form of findings and recommendations regarding his habeas petition.

In view of the foregoing analysis and the recommendations which follow, it will be recommended that Petitioner's request for a decision be dismissed as moot.

///

///

X.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.   28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).   A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.   § 2253(c)(2).   Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.   Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).   A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right or that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.   Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.   Id.   An applicant must show more than an absence of frivolity or the existence of mere good faith; however, an

37

applicant need not to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Habeas Rule 11(a).

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

XI.  Recommendations

Accordingly, it is RECOMMENDED that:

1)  Petitioner's request for a decision be DISMISSED as moot; and

2)  The petition for writ of habeas corpus be DENIED; and

3)  Judgment be ENTERED for Respondent; and

4)  The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 15, 2013**                          **/s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE